## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br><br>**Mike Terance Tracy,**<br><br>          **Debtor.** | **Bankruptcy Case**<br>**No. 20-40074-JMM** |
| **Kathleen A. McCallister,**<br><br>          **Plaintiff,**<br><br>**vs.**<br><br>**Nancy Kunau,**<br><br>          **Defendant.** | **Adv. Proceeding**<br>**No. 21-08018-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

    Jeffrey Philip Kaufman, Meridian, Idaho, Attorney for Plaintiff.

    Paul Norwood Jonas Ross, Paul, Idaho, Attorney for Defendant.

### *Introduction*

    This Court is presented with a single legal issue in a motion to dismiss, which is whether a trustee can avoid a judicial lien for a domestic support obligation ("DSO")

MEMORANDUM OF DECISION − 1

obtained within 90 days of the bankruptcy petition under § 547(b).[1] The lienholder

argues that § 547(c)(7) is a complete defense to the avoidance because the underlying

judgment represents a DSO and that the recordation of the lien is the same as a "bona fide

payment" articulated in the subsection. This Court concludes that the recordation is not a

payment described in § 547(c)(7). The amended motion to dismiss is denied for the

reasons set forth below.

### *Procedural Summary of the Amended Motion to Dismiss*

Before the Court is an amended motion to dismiss filed by the defendant Dr.

Nancy Kunau ("Dr. Kunau"). Dkt. No. 13. The chapter 13 trustee, Kathleen A.

McCallister ("Trustee"), opposed the motion. Dkt. No. 15. The Court heard oral

argument on the matter on October 12, 2021, and thereafter took the motion under

advisement.

The Court has considered the arguments put forth, and this Memorandum Decision

sets forth the Court's findings, conclusions, and reasons for its disposition of the motion.

Rules 7052; 9014. The parties do not dispute the facts presented in the motion. The

procedural history of the creation of Dr. Kunau's claim and the underlying bankruptcy

case is complicated, however, and those facts must first be described.

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

MEMORANDUM OF DECISION – 2

*Facts*

Prior to Mike Terance Tracy ("Debtor"), filing a chapter 7 petition on January 28, 2020, he was involved in a custody dispute in Idaho state court. Dkt. No. 1 (hereafter, the "Complaint"), ¶ 3. During the proceedings, the Idaho magistrate court (the "Magistrate Court") appointed Dr. Kunau as guardian ad litem, as well as appointed counsel to help her carry out her duties. Complaint, ¶ 3; Dkt. No. 13, Ex. A. Together, the Magistrate Court's orders made Debtor solely responsible for the costs and fees of Dr. Kunau and her attorney.

In January 2020, Dr. Kunau successfully reduced the accrued costs and fees of herself and her counsel to a judgment. Complaint, ¶ 9. The Magistrate Court entered a partial judgment for fees and expenses in the amount of $17,303, while also prescribing that post-judgment interest accrues as provided by statute. Complaint, ¶ 9. Dr. Kunau thereafter recorded the judgment in the appropriate Idaho county and as a result a judgment lien was created. The judgment lien is secured by Debtor's principal residence. Complaint, ¶¶ 16, 17, and 19.

On January 28, 2020, Debtor filed a joint chapter 7 petition with his wife, Julia Nelsioni. Complaint, ¶ 29. Dr. Kunau filed an initial claim in that case for her and her counsel's unpaid fees. Complaint, ¶ 40.

On April 10, 2020, Dr. Kunau filed an adversary proceeding seeking to have the debt owed to her excepted from discharge pursuant to § 523(a)(5). *Kunau v. Tracy (In re*

MEMORANDUM OF DECISION − 3

*Tracy)*, 20-08024-JMM at Dkt. No. 1.[2] The only defendant in that adversary is the Debtor

Mike Tracy, who never appeared. This Court entered a default judgment in that adversary

proceeding on July 8, 2020, *Id*. at Dkt. No. 11, and subsequently entered an amended

default judgment awarding fees and costs on August 8, 2020. *Id*. at Dkt. No. 17. The

default order recognized the "Idaho 5th District, Cassia County Magistrate Court's

appointment of Nancy Kunau as Guardian ad Litem in that case, along with her appointed

legal counsel, both to represent the best interests of the children, and that such debts

incurred within the scope of those appointments and awarded by that court, are

NONDISCHARGEABLE pursuant to § 523(a)(5) as against Defendant Mike Terance

Tracy." *Id*. (emphasis in original).

Back in the core case, on April 14, 2021, this Court entered an order severing the

joint debtors and bifurcating that case. *In re Tracy*, 20-40074-JMM, Dkt. No. 175. On

April 15, 2021, upon Debtor's motion, this Court entered an order converting Debtor's

case to chapter 13, and Trustee was appointed. *In re Tracy*, 20-40074-JMM, Dkt. No.

177.

---

[2] Pursuant to Federal Rule of Evidence 201, this Court, on its own, can take judicial notice of information
that is generally known within its jurisdiction or can accurately be determined from sources whose
accuracy cannot be reasonably be questioned. That includes taking notice of its own docket in the
underlying case. *Hillen v. Specialized Loan Servicing, LLC (In re Leatham)*, 2017 WL 3704512, *2
(Bankr. D. Idaho Aug. 24, 2017). Moreover, the Court can also consider matters subject to judicial notice
when ruling on a Civil Rule 12(b)(6) motion without turning the motion into one for summary judgment.
*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980
(9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

MEMORANDUM OF DECISION – 4

After conversion to chapter 13, Dr. Kunau filed her claim, asserting that the fees and costs incurred are a DSO entitled to priority under § 507(a)(1)(A). Complaint, ¶ 40. Trustee objected to that claim, arguing that guardian ad litem fees are not a DSO within the definition of § 101(14A), and therefore not entitled to such priority. *In re Tracy*, 20-40074-JMM, Dkt. Nos. 200 and 208. The Court resolved the issue in a memorandum decision entered in the core bankruptcy case on September 9, 2021. *In re Tracy*, 20-40074-JMM, Dkt. No. 234. In short, the Court determined that Dr. Kunau holds a claim for a DSO partially secured by the judicial lien and any undersecured portion of the fees attributed to Dr. Kunau's services as guardian ad litem is an unsecured priority claim. *Id.*[3] The Court did not reach the issue of whether her counsel's fees were also a DSO because such a determination was unnecessary under the facts presented at that time. *Id.*[4]

On June 3, 2021, Trustee commenced this adversary proceeding to avoid the judgment lien for the benefit of the estate pursuant to § 547(b). Dr. Kunau moves to

---

[3] As shall be shown later in response to Dr. Kunau's Motion to Dismiss, Trustee does not dispute that Dr. Kunau's allowed claim as determined in the memorandum decision is a DSO whether it is partially or fully unsecured.

[4] The decision in the underlying bankruptcy case addressed other issues including whether the claim included debts incurred postpetition, how much of the claim was an allowed secured claim, and how much was an allowed unsecured priority claim as a DSO. All of the amounts of the claim were determined to be DSOs, but the Court concluded that all but $272.94 was secured by real property and, therefore, Dr. Kunau held a secured claim of $17,287.44 and the balance was an unsecured priority claim under § 501(a)(1)(A). Thereafter, Dr. Kunau's motion to dismiss was amended in this adversary proceeding to reflect the findings and holding in the Court's memorandum decision in the bankruptcy case.

MEMORANDUM OF DECISION − 5

dismiss the Complaint under Civil Rule 12(b)(6) on the grounds that § 547(c)(7)

precludes such avoidance. Dkt. No. 13.

### *Analysis and Disposition*

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C.

§§ 1334(a) and (b) and 157(b)(2)(A)(B), (F) and (O) and the General Orders in the

District of Idaho referring cases under title 11 to this Court.

A.     Civil Rule 12(b)(6) Standards

Dr. Kunau argues that this adversary proceeding should be dismissed pursuant to

Civil Rule 12(b)(6). The standards governing such motions are well-established:

> A motion to dismiss in an adversary bankruptcy proceeding is governed by
> Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal
> Rule of Civil Procedure 12(b)–(i). *Agarwal v. Pomona Valley Med. Grp.,
> Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 671–72 (9th Cir.
> 2007). At the motion to dismiss phase, the trial court must accept as true all
> facts alleged in the complaint and draw all reasonable inferences in favor of
> the plaintiff. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir.
> 2011). However, the trial court does not have to accept as true conclusory
> allegations in a complaint or legal claims asserted in the form of factual
> allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.
> Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss, a
> plaintiff must aver in the complaint "sufficient factual matter, accepted as
> true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.
> Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)
> (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955). A dismissal under
> Rule 12(b)(6) may therefore be based on either the lack of a cognizable
> legal theory or on the absence of sufficient facts alleged under a cognizable
> legal theory. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116,
> 1121 (9th Cir. 2008).

*Tracht Gut, LLC v. Los Angeles Cnty. Treasurer (In re Tracht Gut)*, *LLC*, 836 F.3d 1146,

1150–51 (9th Cir. 2016).

MEMORANDUM OF DECISION – 6

B.    Section 547

In this adversary, Trustee seeks to avoid the judicial lien held by Dr. Kunau and

recover it as a preference under §§ 547(b), 550(a), and 551. Section 547(b) provides that

a trustee may avoid any transfer of an interest of the debtor in property:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such
> transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>> (A) on or within 90 days before the date of the filing of the petition;
>> or
>> (B) between ninety days and one year before the date of the filing of
>> the petition, if such creditor at the time of such transfer was an
>> insider; and
> (5) that enables such creditor to receive more than such creditor would
> receive if—(A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent
>> provided by the provisions of this title.

§ 547(b).

Dr. Kunau does not refute or attack any of the elements of § 547(b). Rather, Dr.

Kunau argues, pointedly, that she is entitled to assert a defense found in § 547(c)(7),

which provides that a trustee cannot avoid a transfer to the extent that such transfer was a

bona fide payment of a debt for a DSO.

The transfer that Trustee is seeking to avoid is the judgment lien that Dr. Kunau

obtained just before Debtor commenced his case. In response to Dr. Kunau's motion to

dismiss, Trustee does not dispute that Dr. Kunau's fees are a DSO. In fact, Trustee

conceded during oral argument that Dr. Kunau's counsel's fees are part of the DSO for

MEMORANDUM OF DECISION − 7

the purposes of § 101(14A) and § 507(a)(1)(A), and represented that if the lien is

avoided, Dr. Kunau would be entitled to assert an unsecured claim for both her and her

counsel's fees as a DSO, such that the full amount of the claim would be entitled to

priority status pursuant to § 507(a)(1)(A). But the Trustee argues that the judgment lien is

not a bona fide payment, a requirement of § 547(c)(7).

The first question, then, is whether the recordation of a judgment lien to secure a

debt for a DSO can be considered a "bona fide payment" for the purposes of raising the

§ 547(c)(7) defense.

When interpreting a statute, this Court's "task is to construe what Congress has

enacted." *Duncan v. Walker*, 533 U.S. 167, 172, 121 S. Ct. 2120, 2124 150 L. Ed. 2d 251

(2001). To do so, the Court begins with the plain language of the statue. Section

547(c)(7) provides, "The trustee may not avoid under this section a transfer . . . to the

extent such transfer was a bona fide payment of a debt for a domestic support obligation."

Trustee urges the Court to read the text as is, that is, that Congress intended only

for direct payments to be shielded by § 547(c)(7). In response, Dr. Kunau argues that the

term "payment" in the context of § 547(c)(7) includes all types of transfers, including the

creation and perfection of judicial liens.

Courts will "look first to the plain language of the statute, construing the

provisions of the entire law, including its object and policy, to ascertain the intent of

Congress." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996)

(internal quotation marks and citation omitted). "A primary canon of statutory

MEMORANDUM OF DECISION − 8

interpretation is that the plain language of a statute should be enforced according to its terms, in light of its context." *ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1210 (9th Cir. 2015) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 846, 136 L. Ed. 2d 808 (1997); *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 803 (9th Cir. 1989)). Only if the language of the statute is unclear does a court look to other sources to determine Congressional intent. *Nw. Forest Res. Council v. Glickman*, 82 F.3d at 830.

Because the Code does not define the word payment, the Court employs the ordinary meaning of the term. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69, 131 S. Ct. 716, 724, 178 L. Ed. 2d 603 (2011). To this end, the word "payment" means "1. Performance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation. 2. The money or other valuable thing so delivered in satisfaction of an obligation." PAYMENT, BLACK'S LAW DICTIONARY (11th ed. 2019). "Satisfaction" means "1. The giving of something with the intention, express or implied, that it is to extinguish some existing legal or moral obligation. 2. The fulfillment of an obligation; esp., the payment in full of a debt." SATISFACTION, BLACK'S LAW DICTIONARY (11th ed. 2019).

While those two definitions may seem a bit circular, one thing is clear: A judicial lien is not something that is delivered or accepted in full satisfaction of a debt, nor does it extinguish some existing obligation. Rather, a judicial lien is an interest in property to

MEMORANDUM OF DECISION – 9

secure payment of a debt that is obtained by judgment. §§ 101(36) & (37). In other words, the judicial lien secures the payment of a debt; it is not the payment itself.

The Code does, however, define the word "transfer." Recall that the specific text of § 547(c)(7) states, "The trustee may not avoid under this section a *transfer* . . . to the extent such *transfer* was a bona fide payment of a debt for a domestic support obligation." Under § 101(54), the term "transfer" means "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property."

It is notable that Congress spoke with specificity in § 547(c)(7) when it shielded transfers from avoidance to the extent those transfers were bona fide payments for DSOs. Yet, under § 101(54), Congress explicitly enumerated that one type of transfer is "the creation of a lien." Therefore, if Congress intended the word "payment" in § 547(c)(7) to include the creation of a lien to secure a debt for a DSO, why did it also limit those transfers implicated by § 547(c)(7) to only those *that were bona fide payments* for a DSO?

The Court does not find the language of the statute to be unclear or ambiguous. Rather, Congress knows when it intends a statute to encompass transfers generally, that is, to include all types of transfers, and when it chooses to curtail a statute's reach. In other words, Congress, in enacting § 547(c)(7), could have simply included all types of transfers for a DSO within the reach of the statute, whether they be payments or the

MEMORANDUM OF DECISION − 10

creation of liens to secure such debts. But Congress chose differently. It specifically prescribed avoidance only for those transfers that were bona fide payments for a DSO.

As the Court has determined the statutory language at issue is unambiguous,[5] it will not consider other sources to ascertain Congressional intent. Indeed, when ambiguity is not present, looking to other sources to ascertain Congressional intent, such as the legislative history, is unnecessary and in fact precluded by Supreme Court precedent. Accordingly, the Court will not examine the meaning of § 547(c)(7) further.[6]

Dr. Kunau's second argument is that, even if §547(c)(7) is not ambiguous, excluding the recordation of the judgment lien from that subsection forces the Debtor to pay the debt twice. Specifically, Dr. Kunau contends that if Trustee successfully avoids the DSO lien and preserves it for the benefit of the bankruptcy estate, yet Dr. Kunau retains a *priority* unsecured claim which must be paid in full through the plan, Debtor will have to pay the same debt twice. While not explicitly articulated as such, Dr. Kunau essentially argues that excluding the recordation of a judgment lien from § 547(c)(7) will lead to an absurd result. The case law is clear that when the plain meaning of a statute will lead to absurd results, courts may look beyond the words to the purpose of the act.

---

[5] In fact, at oral argument, counsel for Dr. Kunau agreed that there was no ambiguity in the language of subsection (c)(7) but rather the word "payment" was broad enough to encompass the recordation of the judgment lien.

[6] Moreover, Dr. Kunau's counsel, at oral argument, explicitly conceded that looking beyond the statute is unnecessary. Rather, as stated above, Dr. Kunau argues that the word "payment" should be read to include all types of transfers.

MEMORANDUM OF DECISION – 11

*United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543, 60 S. Ct. 1059, 1064, 84 L. Ed. 1345 (1940). Moreover, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S. Ct. 3245, 3252, 73 L. Ed. 2d 973 (1982).

It also could be argued that the Court's interpretation of § 547(c)(7) is absurd in light of Congress' clear indication that DSOs are to be protected.  *See* § 522(f)(1), which prevents debtors from avoiding DSO liens that interfere with exemptions, § 523(a)(5), which protects DSOs by excepting those debts from discharge, and §507(a)(1), which provides DSOs priority status.

Here, Dr. Kunau has not demonstrated how avoiding the recordation of a lien will lead to an absurd result. Indeed, even without the broad interpretation of "bona fide payments" for which Dr. Kunau advocates, the protections for DSOs in the Bankruptcy Code remain in place. For example, if the judgment lien is avoided, Dr. Kunau can still assert a fully unsecured claim for a DSO, nondischargeable under § 523(a)(5) and entitled to priority under § 507(a)(1)(A). *See* § 502(d). Under § 1322(a)(2), priority claims must be paid in full as part of the chapter 13 plan. Furthermore, in the event the Debtor elected to dismiss his bankruptcy case, remedies are available to Dr. Kunau including § 349(b)(1)(B), which states that, upon a proper showing of cause, transfers avoided

MEMORANDUM OF DECISION − 12

under § 547 can be reinstated.[7] Thus, the fact that a DSO is not dischargeable under

§ 523(a)(5), is entitled to priority under § 507(a)(1), is required to be paid in full as a part

of any chapter 13 plan under § 1322(a)(2), and cannot be discharged in a chapter 13

under § 1328(a)(2), does not indicate the Court's reading of § 547(c)(7) is absurd.[8] In

short, the Court's plain meaning interpretation of the aforementioned statutes is

consistent with the legislative purpose of protecting a DSO from discharge, ensuring it

gets paid under a 13 plan while also permitting the Trustee to exercise the enumerated

avoidance powers afforded to her for certain types of transfers.[9]

       In sum, the recordation of the judgment lien is not a bona fide payment for a DSO.

The judgment lien secures payment of the debt, but it is not a payment. Dr. Kunau,

---

[7] Here, the Court is not ruling on the ability of Debtor to dismiss his chapter 13 case. Debtor previously converted his case from a chapter 7 to a chapter 13 under § 706(a). As such, any attempt by Debtor to dismiss his chapter 13 case is not controlled by § 1307(b) but, rather, by other subsections. By addressing the language under § 349(b)(1)(B), the Court is simply illustrating that this language Congress inserted into the Code provides protections to a holder of a DSO that weakens an absurd result argument.

[8] For these same reasons, the Court is not persuaded that the prohibition under § 522(f)(1)(A) of a debtor's right to avoid the fixing of a DSO lien that impairs a homestead should be construed as a limitation on a trustee's right to avoid a judgment lien under § 547. While Debtor may not be able to avoid a lien such as the one presented in this case, no prohibition is built into § 522(f) to prevent the Trustee from exercising other powers identified in chapter 5. The fact that Debtor cannot avoid the judicial lien does not, therefore, limit the Trustee's avoidance powers.

[9] The Court is not deciding at this juncture whether Trustee can avoid the lien pursuant to § 547(b) but only whether § 547(c)(7) creates a complete defense that requires dismissal of the Complaint. When questioned at the hearing, Trustee indicated that the secured claim would be relevant only for the best interest of creditors test.  In other words, she argued, while Debtor would be required to pay interest on the secured claim held by the Trustee under § 551, the result would be that the proceeds from the payment of the secured claim in full through the plan would then be devoted to: 1) payment in full of the priority unsecured DSO claim held by Dr. Kunau; and (2) the interest accruing on the secured claim would be available for distribution to the other unsecured creditors. These issues are not ripe today, but should be decided in the context of plan confirmation.

MEMORANDUM OF DECISION − 13

therefore, is unable to assert § 547(c)(7) as a defense to dismiss the Trustee's complaint. As such, Trustee has asserted a cognizable legal theory that will be allowed to proceed and dismissal is not warranted.

### *Conclusion*

Trustee has asserted a cognizable legal claim under § 547(b), to which, under the facts presented here, § 547(c)(7) is not a defense. Trustee's objection, Dkt. No. 15, will be sustained, and Dr. Kunau's amended motion to dismiss, Dkt. No. 13, will be denied. A separate order will be entered.



DATED:  November 2, 2021

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION − 14